IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**MICHAEL A. DUNCAN**                                                                              **PLAINTIFF**
**ADC #111386**

v.                        No: 5:17-cv-00311 JM-PSH

**ARKEAMA JOHNSON**                                                      **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Michael A. Duncan filed this *pro se* 42 U.S.C. § 1983 action alleging that he was denied access to the chapel library, that he was forced to attend a chapel service not of his faith, and that he was unable to practice his religion while confined at the Pine Bluff Unit of the Arkansas Department of Correction (ADC) (Doc. Nos. 2, 4 & 24). Duncan has since been released. *See* Doc. No. 43. Duncan's claims against Wendy Kelley, Gaylon Lay, and Dexter McDonell were previously dismissed for failure to exhaust administrative remedies. *See* Doc. Nos. 53 & 55. The only remaining defendant is Lt. Arkeama Johnson.

Before the Court is a motion for summary judgment and related pleadings filed by Johnson (Doc. Nos. 65-67). Duncan filed a response (Doc. No. 69), and Johnson filed a reply (Doc. No. 70). For the reasons described herein, the undersigned recommends that Johnson's motion for summary judgment be granted.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City*

*of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Undisputed Facts

Duncan is of the Messianic faith.  Doc. No. 2 at 3.  On September 9, 2017, Duncan went to Chapel Call expecting to go to the Pine Bluff Unit Chapel Library.  Doc. No. 2 at 3; Doc. No. 61 at 1 (Duncan's Response to Request for Admission No. 1).  While at Chapel Call, a chapel service began.  Doc. No. 2 at 3.  Lt. Johnson informed Duncan that he could not go to the Chapel Library during services but must go either before or after the services.  Doc. No. 61 at 2 (Duncan's Response to Request for Admission No. 4); Doc. No. 2 at 3.  The Pine Bluff Unit Chapel Rules provide that no inmate may be in the Chapel Library or other offices while a service is in progress.  Doc. No. 65-2 (Pine Bluff Unit Chapel Rules); Doc. No. 61 at 2 (Duncan's Response to Request for Admission No. 4).  Lt. Johnson informed Duncan that he could not sit in the library due to security reasons.  Doc. No. 2 at 9.  Duncan told Lt. Johnson that he wanted to go to the Chapel Library because the services were not Messianic, and his request was denied.  Doc. No. 2 at 3.  Duncan also asked to return to his barracks but was told he must go to the chapel service or be locked up.  *Id.*

Duncan remained in the chapel for the duration of the chapel service.  *Id.*  The chapel service lasted no longer than one hour.  Doc. No. 61 at 2 (Duncan's Response to Request for Admission No. 8).  Duncan's only participation in the chapel service was his physical presence in the chapel.  Doc. No. 61 at 3 (Duncan's Response to Request for Admission No. 9).

After the incident occurred, Chaplain Dexter McDonnell informed Duncan that the "good order of the institution" requires that inmates cannot "simply go back to the barrack" if they come

to chapel services.  Doc. No. 2 at 6.  In September 2017, ADC Policy 120 governed the general conduct of religious services within ADC Units.  Doc. No. 65-1 (ADC Policy 120).  ADC Policy 120 states that "[i]t is the policy of the [ADC] to provide those incarcerated in its care the greatest amount of freedom and opportunity to pursue individual religious beliefs and practices as is consistent with the safety of inmates and staff alike, the good order of the institution and accepted correctional practices."  *Id.*

## IV. Discussion

### A.   *Sovereign Immunity*

Johnson correctly asserts that Duncan's monetary claims against her in her official capacity are barred by sovereign immunity.[1]  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity.  *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).  Accordingly, the undersigned recommends that Johnson be awarded summary judgment with respect to Duncan's official capacity claims.

### B.   *Qualified Immunity*

Johnson argues that Duncan brings no individual capacity claim against Johnson because he did not specifically state he was suing Johnson in her individual capacity.  His original complaint did not specify in what capacity he sued Johnson.  *See* Doc. No. 2.  His first amended complaint specified that he sued the other defendants in their individual and official capacities, but did not describe his claims against Johnson.  *See* Doc. No. 4.  However, his second amended

---

[1] Duncan's claims for injunctive relief are moot because he is no longer incarcerated.  *See generally Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions.").

complaint states that he wanted a specific amount "from each defendant, and their official capacity." Doc. No. 24 at 3. The Court construes that statement as indicating an intent to sue Johnson in both her individual and official capacities. Nevertheless, the Court finds that Johnson is entitled to qualified immunity with respect to Duncan's individual capacity claims as explained below.

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

It is well settled that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The First Amendment provides that no law shall prohibit the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, a plaintiff cannot establish a First Amendment violation without demonstrating that a substantial burden was placed on his ability to practice his religion. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (to

survive summary judgment motion, a plaintiff must first raise a question of material fact regarding whether a substantial burden was placed on his ability to practice his religion).  The United States Court of Appeals for the Eighth Circuit has held that, in order to constitute a "substantial burden" on the exercise of religion, a government policy or action must:

> … significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.

*Murphy v. Missouri Dep't of Corr.,* 372 F.3d 979, 988 (8th Cir. 2004) (quoting *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)) (alteration in original).  The inmate "bear[s] the burden of establishing a *substantial* burden on a religious exercise." *Van Wyhe v. Reisch*, 581 F.3d 639, 657 (8th Cir. 2009) (emphasis in original).

For purposes of this Recommendation, the Court assumes Duncan's adherence to the Messianic faith is a sincerely held religious belief.  The Court also accepts as true the facts relied on by Duncan in asserting his claims.  Duncan acknowledges he was forced to attend a religious service of another faith only one time, but claims "[i]t is irrelevant how many times it happened." *See* Doc. No. 69 at 1.  The Court disagrees.  One isolated incident of being forced to attend a religious service of another faith is insufficient to show a *substantial* burden on a sincerely held religious belief or Duncan's ability to practice his religion. *See e.g., Arnhold v. McGinnis,* 9 F.3d 112 at *2 (7th Cir. 1993) ("An isolated incident of an inmate being detained for security purposes during religious services does not infringe upon that inmate's right to the free exercise of his religion, even if the inmate did not wish to be present at that particular service and was prevented from attending services of his own choosing on that one occasion.").  Accordingly, Duncan fails

to describe a constitutional violation and Johnson is entitled to qualified immunity. Duncan's free exercise claims should be dismissed with prejudice.

C.  *State Law Claims*

Because Duncan's constitutional claims are subject to dismissal, the Court should decline to exercise jurisdiction over Duncan's state law claims. *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

## IV.  Conclusion

The undersigned recommends that Johnson's motion for summary judgment (Doc. No. 65) be granted; that Duncan's free exercise claims against Johnson be dismissed with prejudice; and that Duncan's state law claims be dismissed without prejudice.

DATED this 22nd day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE